IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LISA ANTOINE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. ) CV-01-AR-0988-S |
| FLAGSTAR BANK, FSB, | ) ) ) |
| Defendant. | ) |

ENTERED
JUL 24 2001

### MEMORANDUM OPINION

Before the court is a motion for summary judgment by defendant, Flagstar Bank, FSB ("Flagstar"). Plaintiff, Lisa Antoine ("Antoine"), alleges that Flagstar violated the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), by mis-allocating payments she made in satisfaction of a mortgage note. As set forth herein, Flagstar's motion is due to be granted. Accordingly, Flagstar's motion to strike Antoine's request for punitive damages is moot.

### Pertinent Material Facts

Under the terms of Antoine's note, she was to re-pay $76,000 at an annual rate of 7.25%. Until the principal was re-paid, interest was to be charged on the unpaid balance of the principal. The note set Antoine's monthly payment at $518.45 and specified



that it was to be applied "to interest before principal." Similarly, the mortgage specified that monthly payments were to be applied to the interest due before being applied to the principal due. The first monthly payment was due March 1, 1998. If Antoine still owed amounts under the Note as of the Maturity Date, February 1, 2028, she was obligated to fully satisfy the outstanding amount at that time.

The note also gave Antoine the right to pay down the principal ahead of the monthly schedule. Provision four, "Borrower's Right To Prepay", reads as follows:

> I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
> I may make a full payment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

By a "Servicing Notice", Antoine's lender informed her that it had assigned the servicing of her note to Flagstar. The Servicing Notice also instructed Antoine that payment coupons had to accompany any payment. The coupons provided a space for the borrower to indicate to the loan servicer how to allocate any

amount paid that was in excess of the monthly payment. The borrower could indicate, in dollars and cents, how much of the additional payment was to go to "principal", "other", or "escrow".

From February, 5, 1998 to January 15, 1999, at which time her note was transferred to another entity, Antoine made 16 payments to Flagstar. During some months, she made multiple payments. In July and December, she made no payments at all. The size of the payments ranged from $519 to $4500. Some checks were accompanied by more than one coupon, but no coupon contained an amount written in for "principal", "escrow", or "other". Only one check included extra information written by Antoine. The memo line of that check, written for $1,560.00 and received by Flagstar on March 6, 1998, read: "May, June, July". Over the period in question, Flagstar allocated to future monthly payments all the amounts received that exceeded what was currently due.

### **Summary Judgment Standard**

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The

Supreme Court has emphasized that this language means exactly what it says: there must be a _genuine_ issue of _material_ fact, not merely some factual dispute. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a reasonable jury could return a verdict for plaintiff. If so, defendants' motion for summary judgment must be denied. If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### Discussion

Although Antoine alleges three separate violations of TILA, namely, of 15 U.S.C. §§ 1606(a), 1615(a), and 1639(c), her claims arise from a single set of facts. Antoine says that she intended that every dollar she paid above $518.45 per month from February,

1998 to January, 1999 pay down her outstanding principal, from which was calculated her interest. Instead, Flagstar allocated the additional amounts toward future monthly payments. Because the monthly payments were comprised of both interest and principal, the principal was not reduced as quickly as it would have been if the additional amounts had gone toward only the principal. Accordingly, when interest - as a percentage of the outstanding principal - was calculated, the interest due was higher than it would have been if the additional amounts had gone toward just the principal. Thus, Antoine claims, because of Flagstar's mis-allocation of her payments, she paid interest on an incorrectly inflated principal amount, resulting in her payment of an erroneously high interest rate and a violation of §§ 1606(a), 1615(a), and 1639(c).

The language of the Note undercuts the basis of Antoine's three claims. The gist of Antoine's complaint is that the payments she made above and beyond the monthly payment schedule should have been applied entirely to principal, not to a combination of principal and interest. Provision Four of the Note establishes that for an amount paid by Antoine to go to principal, and principal alone, she had to indicate as much in writing. She did not. Because she failed to notify Flagstar of her now-stated

5

desire to devote substantial amounts of money to paying down the principal in accordance with the terms of the Note, Flagstar was not under a duty to allocate her additional payments to principal only. Furthermore, in taking her additional payments as monthly payments for future months, Flagstar was acting in conformity with language in both the Note and the mortgage to the effect that payments were to be applied to the interest due, then to the principal due. There is no doubt that if Flagstar had allocated the excess payments solely to the principal instead of future monthly payments, the amount of interest owed by Antoine would have been less than it was. However, in allocating her payments as it did, Flagstar acted within what was permitted by the Note and the mortgage. Because the terms themselves are not alleged to be in contravention of any applicable law, Flagstar cannot be held liable under TILA for acting in accordance with the terms of agreements freely entered into by Antoine.

The evidence is mixed on exactly which payments, or which portions of which payments, Antoine actually intended to go toward paying down the principal. However, the resolution of that issue is of no matter here. Viewing the evidence in a light most favorable to Antoine and assuming that every cent she paid above $518.45 per month was actually intended to be applied to the

principal and just the principal, there is no justification in this case for ignoring the instruction in the Note that such intention had to be expressed in writing. Antoine's actions had to conform to the terms of the Note, not the other way around.

Moreover, the court notes that, as a matter of law, §§ 1615(a) ("Prompt refund of unearned interest required") and 1639(c) ("No prepayment penalty") are not available to Antoine in this action. Section 1615(a) is available only for those consumers who have "[prepaid] in full the financed amount under any consumer credit transaction." Antoine had not fully prepaid her financed amount, therefore, by its own terms, § 1615(a) cannot apply here.

Similarly, Antoine's contention that Flagstar violated § 1639(c) by charging her a prepayment penalty of unearned interest is simply not a cognizable claim. Section 1639(c)(1)(A) specifies that its application is limited to those mortgages that meet the requirements set out in 15 U.S.C. § 1602(aa). Antoine argues first that her mortgage meets this requirement under § 1602(aa)(1)(A), which establishes that a mortgage qualifies if:

> the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor....

7

Even if the annual percentage rate is not determined by the annual percentage rate given in the Note, 7.25%, Antoine has provided no evidence on the yield of comparable Treasury securities. Without it, she has not established that the rate-based § 1602(aa)(1)(A) standard has been met. See 60 Fed. Reg. 15465 (March 24, 1995) (explanation of the coverage of 15 U.S.C. § 1639 ("Requirements for Certain Closed-End Home Mortgages"), as implemented by Regulation Z § 226.32(a)); see also Flynn v. People's Mortgage, Inc., No. 98-C-3760, 1998 WL 831907, at *4 (N.D.Ill. Nov. 20, 1998). As an alternative argument, Antoine points out that, unlike § 1639(c)(1)(A), § 1639(c)(1)(B)'s applicability is not conditioned on a mortgage qualifying under § 1602(aa). While Antoine is correct in this contention, this does not help her cause. Section 1639(c)(1)(B) only explains what is and what is not a "prepayment penalty":

> For purposes of this subsection, any method of computing a refund of unearned scheduled interest is a prepayment penalty if it is less favorable to the consumer than the actuarial method (as that term is defined in section 1615(d) of this title).

It is left to other provisions, such as § 1639(c)(1)(A), to explain under what circumstances a prepayment penalty, as construed

according to § 1639(c)(1)(B), will create liability. On its own, § 1639(c)(1)(B) cannot be violated because it sets out no standard to violate.

### Conclusion

A separate and appropriate order will be entered.

DONE this 24th day of July, 2001.

　　　　　　　　　　　　　/s/ William M. Acker
　　　　　　　　　　　　　WILLIAM M. ACKER, JR.
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE